# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-701


**HERCULES OFFSHORE, INC.**

**VERSUS**

**LAFAYETTE PARISH SCHOOL BOARD, SALES AND USE TAX DEPT.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20076491, DIVISION "B"
HONORABLE JULES DAVIS EDWARDS, III, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**AFFIRMED.**


**Stephen Hawley Myers**
**Stephen Hawley Myers, L.L.C.**
**P. O. Box 51222**
**Lafayette, LA 70505-1222**
**Telephone: (337) 408-3626**
**COUNSEL FOR:**
> **Plaintiff/Appellant - Hercules Offshore, Inc.**


**Robert Frederick Mulhearn, Jr.**
**Rainer Anding Talbot & Mulhearn**
**8480 Bluebonnet Boulevard - Suite D**
**Baton Rouge, LA 70810**
**Telephone: (225) 766-0200**
**COUNSEL FOR:**
> **Defendants/Appellees - Carl Meche, Director Sales Tax, LPSB and**
> **Lafayette Parish School Board Sales and Use Tax Department**

**THIBODEAUX, Chief Judge.**

The plaintiff, Hercules Offshore, Inc. (Hercules), appeals the trial court's denial of its motion to vacate an order of dismissal finding that Hercules had abandoned its suit for refund against the Lafayette Parish School Board, Sales and Use Tax Department (Department). Finding no manifest error on the part of the trial court in denying Hercules' motion to vacate, we affirm.

## I.

## ISSUES

We must decide whether the trial court manifestly erred in denying Hercules' motion to vacate the court's order dismissing Hercules' suit under the law on abandonment.

## II.

## FACTS AND PROCEDURAL HISTORY

Hercules received a 2004 tax assessment from the Department for unpaid sales and use taxes for 1998 through 2001. Hercules paid the total amount due, $339,698.74 ($192,513.44—taxes + $99,056.94—interest + $48,128.36—penalty) under protest and filed suit on December 5, 2007, for a redetermination and refund of the taxes.

In November, 2013, the Department's Collector filed a motion to dismiss Hercules' suit due to abandonment, asserting that the last step in the litigation, under La.Code Civ.P. art. 561, occurred on September 1, 2009.

The trial court issued an order of dismissal. Hercules filed a motion to vacate the order of dismissal which was denied.

## III.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the findings of the trial court. *Mart v. Hill*, 505 So.2d 1120 (La.1987). The appellate court must find from the record (1) that a reasonable factual basis does not exist for the finding of the trial court and (2) that the record establishes that the finding is clearly wrong (manifestly erroneous). *Id*.

## IV.

## LAW AND DISCUSSION

At issue is whether Hercules' 2007 suit to redetermine and refund the tax paid under protest was abandoned. Under La.Code Civ.P. art. 561, an action is abandoned "when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La.Code Civ.P. art. 561(A). A party takes a "step" in the prosecution or defense of a suit when he takes formal action, before the court, intended to hasten the matter to judgment. *Chevron Oil Co. v. Traigle*, 436 So.2d 530, 532 (La.1983). Formal discovery "served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action." La.Code Civ.P. art. 561(B). Abandonment operates without a formal order, "but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of

the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment." La.Code Civ.P. art. 561(A)(3).

The Louisiana Supreme Court has interpreted Article 561 as imposing three requirements:  (1) a party must take some step in the prosecution or defense of the litigation; (2) the step must be taken in the litigation and must appear in the record, with the exception of formal discovery; and (3) that step must have been taken within three years of the last step taken by either the plaintiff or defendant. *Clark v. State Farm Mut. Auto. Ins. Co.*, 00-3010 (La. 5/15/01), 785 So.2d 779. The two jurisprudential exceptions are (1) a showing of *contra non valentem* by the plaintiff, or (2) waiver by the defendant.[1] *Id.*

Here, Hercules filed its petition in December 2007.

The 2008 filings consisted of the defendant's answer, reconventional demand, request for notice, and affidavit.  The plaintiff's answer to the reconventional demand was also included.

In 2009, the plaintiff filed a motion to schedule a status conference, and the defendant filed a motion for summary judgment.  The parties filed various supporting memoranda and continuances, and the trial court issued judgment in July, 2009, denying partial summary judgment to the defendants based upon issues of fact.  The last filing was an August, 2009 order granting the plaintiff an extension of time to answer discovery.  The defendants admit that the plaintiff answered discovery on September 1, 2009, which they assert was the last date of activity that qualifies as a step in the litigation under Article 561.

---

[1] "Properly viewed, these two exceptions evidence two well-established rules of prescription:  (1) Prescription[] does not run against one who is unable to interrupt it (contra non valentem agere nulla currit prescriptio), and (2) prescription may be interrupted by acknowledgment." *Melancon v. Continental Cas. Co.*, 307 So.2d 308, 311 (La.1975).

Nothing was filed in 2010 or in 2011. The only filing in 2012 was the June 19, 2012 request for notice filed by the plaintiff. Nothing was filed in 2013 until the defendant's November 14, 2013 motion to dismiss due to abandonment.

A request for notice, such as that filed by Hercules on June 19, 2012, is not a step intended to hasten the matter to judgment; rather, it is a request for notification in the event that steps are taken. *See Haisty v. State, DOTD*, 25670 (La.App. 2 Cir. 3/30/94), 634 So.2d 919. A motion that grants counsel the right to take steps, or to prepare to take steps, toward the prosecution or defense of a case, but does not itself hasten the matter to judgment, is not an Article 561 step. *See Chevron*, 436 So.2d 530. Thus, where the last undisputed activity, Hercules' response to formal discovery, was September 1, 2009, steps sufficient to interrupt abandonment had to have occurred by September 1, 2012.

## *Correspondence*

Hercules submitted an affidavit attaching several e-mails dated in September, 2011, which indicate efforts to set up a settlement meeting for the following month. However, "'[e]xtrajudicial efforts,' such as informal settlement negotiations between the parties, have uniformly been held to be insufficient to constitute a step for purposes of interrupting abandonment." *Clark*, 785 So.2d at 790. Correspondence evidencing even extensive settlement negotiations between the parties is deemed insufficient to interrupt abandonment. *Chevron*, 436 So.2d 530. The reasoning is that ongoing negotiations do not prevent counsel from taking formal action in the trial court within the intent of Article 561. *Id*.

Counsel for Hercules also attaches a two-paragraph letter from himself to the Tax Director of Hercules dated November 10, 2011, stating that the

above settlement meeting was held and that he disagreed with the outcome. Again under the reasoning of *Chevron*, the plaintiffs retain the ability to set the matter for trial if they feel the negotiations are not progressing satisfactorily. *See Id.*

A November 19, 2012 letter from Hercules counsel to the Collector is not a step because it concerns settlement discussions and because it is dated after the September 1, 2012 deadline signaling abandonment. This is also true of the letter from the Department's counsel dated November 30, 2012, offering to settle the tax dispute in an amount that would refund Hercules $18,971.32.

Hercules asserts that verbal discussions and document retrieval was ongoing, and counsel submits an unsupported log of entries showing that some work, such as a phone call, a letter, or review of documents, was done in most months during the three-year period at issue.[2] Hercules argues that these events show an intent not to abandon and asserts that the law changed in 2011, changing the traditional analysis "to review certain non-formal actions by Plaintiff as a 'step' in the prosecution of a claim." This assertion is misplaced. Hercules cites *La. DOTD v. Oilfield Heavy Haulers, L.L.C.*, 11-912 (La. 12/6/11), 79 So.3d 978, which involved an action by the defendant. Hercules egregiously misquotes the case by stating that abandonment "must" be set aside, wherein *Oilfield actually* quotes *Clark's* 2001 statement that abandonment "may" be set aside by showing a cause outside the record. *See Oilfield*, 79 So.3d at 985. In its block quote attributed to *Oilfield*, Hercules further inserts "Plaintiffs" in brackets next to a reference to "defendants" to enlarge the meaning of *Oilfield* when *Oilfield* clearly

---

[2]We note that the log contains no timed entries and does not attach time sheets or billing and, thus, appears to have been created for the purpose of this litigation. Further, the correspondence reported in the log does not comport to the correspondence put in evidence in the record.

5

applied its reasoning and *Clark's* reasoning to actions by a "defendant" as the party whom the formal action requirement was designed to protect. *See Id.*

Hercules further misinterprets *Oilfield's* partial abrogation of *Melancon*, 307 So.2d 308, in support of its assertion that the law changed in 2011. This simply is not true. *Oilfield* in 2011 was not the first time the Louisiana Supreme Court criticized the language in *Melancon*, as it had previously done so in *Clark* in 2001, which referred to the court's *mistaken* dicta in *Melancon* in 1975. *Melancon*, *Chevron*, *Clark*, and *Oilfield* all involved a *defendant's* steps in the abandonment procedure, based upon the change in the law in 1960.

As explained in *Clark*, in 1960 the procedural rules on abandonment were transferred *from* La.Civ.Code art. 3519, which had addressed only the plaintiff's actions, *to* La.Code Civ.P. art. 561, which added (1) that abandonment is self-operative, and (2) that failure by the *parties* to take steps in the *prosecution or defense* of the suit leads to abandonment. The latter change was construed by *Melancon* "as codifying the defense-oriented waiver exception as a step in the defense." *Clark*, 785 So.2d at 788. However, *Melancon* indicated that the defendant's waiver had to incorporate formal action. Thus, the *mistaken* broad remark in *Melancon* was, "'*extrinsic proof of such a waiver cannot be permitted.*'" *Id.* (quoting *Melancon*, 307 So.2d at 312). The 2001 *Clark* court made it clear that an unconditional tender of an undisputed amount was not a settlement negotiation, but was a defendant's acknowledgement of liability to the plaintiff, which constituted waiver, which could be proved by extrinsic evidence.

In 2011, the *Oilfield* court quoted extensively from its 2001 decision in *Clark*, including *Clark's* criticism of *Melancon* regarding extrinsic evidence of waiver, but it did not change the *Clark* analysis of the law. The *Oilfield* court

found that, when the plaintiff failed to answer discovery timely, the *defendant's* letter to all parties scheduling a mandatory discovery conference under Louisiana District Court Rule 10.1 constituted a *step* in the *defense* of the action because it hastened the matter to trial. Thus, a subsequent dismissal for abandonment obtained by the defendants was vacated when a defendant's own action was found to have interrupted the abandonment period. Essentially, the *Oilfield* decision was about waiver, which has long been held an exception that could be proved by extrinsic evidence.

> Only two categories of causes outside the record are permitted; namely, those causes falling within the two jurisprudential exceptions to the abandonment rule. Those two exceptions are: (1) a plaintiff-oriented exception, based on *contra non valentem*, that applies when failure to prosecute is caused by circumstances beyond the plaintiff's control; and (2) a defense-oriented exception, based on acknowledgment, that applies when the defendant waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned.

*Clark*, 785 So.2d at 784-85 (footnote omitted).

While thoroughly discussing *Clark*, and reiterating the three criteria for abandonment under Article 561 and the above two exceptions to the formal action requirement, the *Oilfield* court stated as follows:

> Thus, the formal action requirement was designed to protect *defendants*, as "allowing informal, ex parte actions to serve as a step in the prosecution 'might interrupt prescription against abandonment without the opposing parties formally learning of them for months or years, to their possible prejudice.'" *Id.* (quoting *DeClouet* [*v. Kansas City Southern Ry. Co.*], 176 So.2d [471,] 476 [(La.App. 3 Cir. 1965)]. The Court concluded the absence of defendant's unconditional tender from the record did not prevent it from constituting waiver, because "[t]he purpose underlying the rule is not present when, as here, it is the *defendant* taking action and doing

7

so *in defense* of plaintiff's suit to avoid penalties and attorney's fees." *Id.*

We find the reasoning in *Clark* is equally applicable to the present case. The April 24th letter was sent *by defendant* OHH and served on the remaining defendants. Further, like the insurer in *Clark*, OHH sent the letter *in defense of the suit*, i.e., to obtain discovery responses from DOTD. We conclude the purpose underlying the formal action requirement would not be served in the present case, as all defendants were aware of the letter, and thus, there is no issue of notice.

In reaching its decision in *Clark*, this Court also criticized our decision in *Melancon v. Continental Casualty Co.*, 307 So.2d 308 (La.1975), which held an agreement by defendant not to take action in state court during the pendency of a federal proceeding was not a waiver, because the agreement was not filed in the state trial court. *Id.* at 312. Specifically, we found the "broad remark" in *Melancon*, stating "extrinsic proof of ... waiver cannot be permitted," was "mistaken to the extent it precludes establishing an acknowledgment by the defendant of an obligation to plaintiff," as it was "inconsistent with the jurisprudence holding that an order of dismissal based on abandonment may be set aside based upon 'a showing that a cause outside the record prevented accrual of the [three] years required for abandonment'...." *Clark*, 00-3010, p. 14-15; 785 So.2d at 788-89 (quoting *DeClouet*, 176 So.2d at 476). Similarly, today, we hold the broad language in *Melancon*, requiring "any action taken by a party that is alleged to be a step in the prosecution or defense of the suit must appear in the court record" is *mistaken to the extent it precludes actions made **by defendants**￼* and known to all parties from constituting a step in the prosecution or defense of an action sufficient to interrupt abandonment.

*Oilfield*, 79 So.3d at 985 (emphasis added).

Thus, contrary to Hercules' assertions, *Oilfield* did not change the law in 2011, or the *Clark* analysis in 2001 of the three criteria for abandonment under Article 561, or the *Clark* conclusion that a defendant's waiver could be shown with extrinsic evidence of the defendant's action that is inconsistent with an intent to

abandon the case. Hercules has not shown any such action by the defendant. It is undisputed that waiver is not at issue in this case. Rather, Hercules raises the other exception, *contra non valentem.*

### Contra Non Valentem Exception to Abandonment

The plaintiff-oriented exception based on *contra non valentem* applies when the plaintiff makes a showing that his failure to prosecute was caused by circumstances beyond his control. *Clark*, 785 So.2d 779. Such circumstances contemplate events which create a legal impediment, such as a plaintiff's active service in the military or confinement to a mental institution, which makes it impossible for the plaintiff to take the necessary steps to prevent abandonment. *Id.* The exception may apply to the automatic stay attendant with bankruptcy petitions. *See Wolf Plumbing, Inc. v. Matthews*, 47,822 (La.App. 2 Cir. 9/25/13), 124 So.3d 494, *writs denied*, 13-2510, 13-2516 (La. 1/17/14), 130 So.3d 949, 950. However, when the plaintiff obtains such a stay and leaves it in place, that is not deemed a circumstance beyond his control. *Faust v. Greater Lakeside Corp.*, 03-808 (La.App. 4 Cir. 11/26/03), 861 So.2d 716, *writ denied*, 04-424 (La. 4/2/04), 869 So.2d 887. Courts have found that circumstances beyond the plaintiff's control include natural disasters but do not include a pro se litigant's lack of knowledge of applicable deadlines. *See Food Perfect, Inc. v. United Fire & Cas. Co.*, 12-2492 (La. 1/18/13), 106 So.3d 107.

Recently, in *Roy v. Belt*, 13-1116 (La.App. 3 Cir. 10/8/14), 149 So.3d 957, this court found no error in the trial court's determination that the death of a judge and the subsequent issue concerning which judge had the authority to hear the case did not create a circumstance beyond the plaintiffs' control. In *Johnson v.*

9

*Calcasieu Parish Sheriff's Dep't*, 06-1179 (La.App. 3 Cir. 2/7/07), 951 So.2d 496, this court found that the plaintiffs' suits to recover a reward were not abandoned where the reward was dependent upon a conviction, and the conviction was obtained, then overturned, and a re-trial was in the sole discretion of the District Attorney.

Here, Hercules has attached in an exhibit the Lafayette Parish Sales and Use Tax Ordinance and has enumerated some of its procedural requirements in an effort to show that the Department controlled the litigation. It further contends that it had no control over when and if the taxpayer's vendors would cooperate in providing documentation; or thousands of invoices in the hands of third parties; or delays caused by the parish auditors because of multiple ongoing audits. Hercules cites *Hyman v. Hibernia Bank & Trust Co.*, 139 La. 411, 71 So. 598 (La.1916), and asserts that another exception exists when the inability of the plaintiff to act is brought about by the practices of the defendant. The *Hyman* case is highly distinguishable and inapposite because it involved fraud, concealment, and conspiracy to *prevent* the filing of suit; thus, *Hyman* involved different issues, facts, and legal analyses.

Factors that Hercules asserts as beyond its control include the Department's timing of its 2004 assessment (for taxes owed through 2001) and the Department's requirement that the assessed taxes be paid within several weeks. Hercules did not file its suit for refund until December, 2007. In terms of policy and the documentation difficulties that Hercules relies upon to show circumstances beyond its control, it seems that document gathering should have started shortly after the assessment in 2004 and should have yielded some results sufficient to claim that a refund was owed when suit was filed in 2007. The Department did not

seek dismissal of the suit for refund until 2013, nine years after the assessment and twelve years after the tax period ended. This was a lingering matter.

"Abandonment is a device that the Legislature adopted 'to put an end to the then prevailing practice of filing suit to interrupt prescription, and then letting the suit hang perpetually over the head of the defendant unless he himself should force the issue.'" *Clark*, 785 So.2d at 786 (citing *Sanders v. Luke*, 92 So.2d 156 (La.App. 1 Cir. 1957)). While we understand the complexities involved in collecting documentation from predecessors whose employees and vendors have scattered, the courts have remedies for such problems. We find that these general, business-type delays are not the legal impediments or circumstances described in the jurisprudence that make it impossible for the plaintiff to take steps to hasten his own matter to trial.

V.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court denying Hercules' motion to vacate the order of dismissal due to abandonment. All costs of appeal are assessed to Hercules Offshore, Inc.

**AFFIRMED.**